## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

**TROOPER DONNA JANE WATTS,**

**Plaintiff,**

**vs.**                                                   **Case No. _____**

**CITY OF MIAMI,**
**OFFICER MICHAEL ALVAREZ,**
**OFFICER PABLO CAMACHO,**
**OFFICER MICHELLE MARSHALL,**
**OFFICER ROSHAN MILLIAGAN,**
**SGT. JAVIER ORTIZ,**
**OFFICER JESUS PEDRAZA,**
**OFFICER JAMIE RAMIREZ,**
**OFFICER CARLOS RODRIGUEZ,**
**OFFICER DAVID CISERNO,**
**OFFICER LUIS SOSA, AND**
**OFFICER GABRIEL ZUBRIA,**

**Defendants.**

_____/

### COMPLAINT; DEMAND FOR JURY TRIAL

Comes now Plaintiff, Trooper Donna Jane Watts, by and through undersigned Counsel, and files this Complaint; Demand for Jury Trial:

### Count I.  Drivers Privacy Protection Act
### against all Defendants

### 18 U.S.C. § 2721, et seq.

1.    Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, based on the federal civil rights violations alleged herein.

2.    Venue is proper in this Court because the violations alleged occurred within this Court's GEOGRAPHICAL district.

3.      Plaintiff, Donna Jane Watts, is a WOMAN, A United States citizen, AND a resident of Florida; and, at all times relevant, has been a Trooper with the Florida Highway Patrol (FHP).

4.      Defendant, the City of Miami, operates the City of Miami police department and is a Florida municipality subject to suit in this Court.

5.      Defendant, Officer Michael Alvarez, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

6.      Defendant, Officer Pablo Camacho, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

7.      Defendant, Officer Michelle Marshall, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

8.      Defendant, Officer Roshan Milligan, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

9.      Defendant, Sgt. Javier Ortiz, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

10.     Defendant, Officer Jesus Pedraza, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

11.     Defendant, Officer Jamie Ramirez, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

12.     Defendant, Officer Carlos Rodriguez, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

13.     Defendant, Officer David Ciserno, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

14.     Defendant, Officer Luis Sosa, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

16.     Defendant, Officer Gabriel Zubria, at all times relevant to this lawsuit, is a police officer with the City of Miami, and is being sued in an individual capacity.

17.     At all times relevant, Trooper Watts owned one or more motor vehicles registered with the State of Florida  Department of Safety and Motor Vehicles ("DHSMV"), and haS held a Florida driver  license issued by DHSMV. To obtain her drivers license and register her motor vehicle  with DHSMV, Trooper Watts was required to, and did, provide DHSMV with certain "personal  information" as defined in 18 U.S.C. § 2725. DHSMV collected Trooper Watts's personal  information through branch offices maintained by DHSMV.

18.     DHSMV entered  Trooper Watts's personal information into the computer database of motor vehicle records  maintained and administered by DHSMV, consisting of records pertaining to motor  vehicle operators' permits, motor vehicle titles, motor vehicle registration, color photograph or image, Social Security number, date of birth, state of birth, detailed vehicle registration information and description, prior and current home and mailing addresses, emergency contacts and those contacts private and highly-restricted personal information.  DHSMV and the Florida  Department of Law Enforcement ("FDLE") made available Trooper Watts's personal information to law enforcement personnel throughout the State of Florida via the Driver  and Vehicle Information Database ("DAVID") system.

19.     On october 11, 2011, Trooper Watts properly pulled over and lawfully cited an off-duty City of Miami police officer, Officer Fausto Lopez, for reckless driving in Broward County, Florida.  Specifically, Officer Lopez was observed by Trooper Watts as driving erratically and as speeding at 120 MPH where the speed limit was 70 MPH or lower; and, Officer

3

Lopez failed or refused to pull over in compliance with the siren and flashing lights on Trooper
Watts's patrol car fore more than seven minutes.

20.     Trooper Watts's citing of Officer Lopez was highly publicized throughout the
state, and many law enforcement officials publicly and personally took umbrage for Trooper
Watts's law enforcement action against Officer Lopez.

21.     Within a month after Trooper Watts citation of Officer Lopez, numerous  threats
were posted online, purportedly by law enforcement officers,  threatening both Trooper Watts
and other members of the Florida Highway Patrol; and Florida  Highway Patrol officers began
being pulled over without cause by other law enforcement officers.

22.     Beginning soon after the October 11, 2011, citation of Officer Lopez, Trooper
Watts was threatened that when a situation occurred where back-up was needed by her or another
FHP Trooper, law enforcement back-up would  not be provided.

23.     Beginning soon after the October 11, 2011, citation of Officer Lopez, Trooper
Watts received hang ups on her unlisted home and cellular phones, and orders of delivery pizzas
that she never ordered.  Trooper Watts was subjected to abuse and threats on law enforcement
websites and observed numerous marked police and suspicious vehicles stopped at or very near
her house for no apparent legitimate reason.

24.     Trooper Watts knew that her unlisted telephone numbers and her home address
were accessible to law enforcement officers in Florida through DAVID.

25.      Based on the foregoing threats and apparent harassment, Trooper Watts
contacted DHSMV on January 19, 2012 to  inquire as to whether law enforcement officers were
viewing her private information.  Not until on or about April 3, 2012, after Trooper Watts's

4

attorney contacted DHSMV in order to  inquire about the delay in Watts receipt of the DAVID results, DHSMV provided Trooper Watts with some of the reports.

26.      Trooper Watts was unpleasantly surprised to discover that between October 2011  and January 19, 2012, well over 88 law enforcement officers from 25 different agencies (including the individual Defendants) had viewed her private driver's license information more than  200 times.

27.      The City of Miami (actually or constructively) knowingly allowed and facilitated at least 32 instances of obtaining, disclosing, and/or using Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

28.      On at least five occasions, Officer Alvarez knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

29.      On at least three occasions, Officer Camacho knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

30.      On at least one occasion, Officer Marshall knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

31.      On at least two occasions, Officer Milligan knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

32.     Sgt. Ortiz incited or otherwise caused subordinate officers and others to obtain, disclose, and/or use Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

33.     On at least two occasions, Officer Pedraza knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

34.     On at least two occasions, Officer Ramirez knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

35.     On at least four occasions, Officer Rodriguez knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

36.     On at least three occasions, Officer Ciserno knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

37.     On at least five occasions, Officer Sosa knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

38.     On at least four occasions, Officer Zubria knowingly obtained, disclosed, and/or used Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

39.     On at least 2 occasions, unknown people used the City of Miami computers to knowingly obtain Trooper Watts's personal information from a motor vehicle record on the DAVID system, for a purpose not permitted under the DPPA.

40.     None of the Defendants' accessing of Trooper Watts's personal DAVID information fell within the DPPA's permitted  exceptions for procurement of her private information.

41.     By the actions described above, each individual Defendant was acting within the course and scope of his or her employment when he or she obtained,  disclosed or accessed Trooper Watts' personal information from the DAVID system for an unlawful purpose.

42.     At no time did Trooper Watts provide her consent for any of the Defendants to obtain, disclose or use, or for any of the City of Miami to disclose or to allow Defendant Individuals to access, obtain, disclose, or use her private  information for anything but legitimate law enforcement business.

43.     Intentionally obtaining, disclosing or using drivers license information without  an authorized purpose is a violation of DPPA. The statute provides for criminal fines and  civil penalties. 18 U.S.C. §§ 2723, 2724.

44.     The DPPA provides relief for violations of a person's protected interest in the privacy of her motor vehicle records and the identifying information therein.

45.     Defendants have violated Trooper Watts's legally protected interest  under the DPPA.

46.     The individual Defendants willfully and recklessly disregarded the law, entitling Trooper Watts to punitive damages under  the DPPA, see 18 U.S.C. § 2724(b)(2).  Under the

DPPA, the Plaintiff is entitled to a baseline liquidated damages award for at least $2,500 for each violation of the DPPA. 18 U.S.C. § 2721(b)(1).

47.     As a result of each of Defendant's actions as alleged in this Count, Trooper Watts has been injured and has suffered damages, including pain and suffering, emotional distress and mental anguish, loss of capacity to enjoy life, and economic losses.

48.     Trooper Watts demands all relief that is just and equitable, including liquidated and other compensatory damages, punitive damages (against individual Defendants only), and reasonable attorney fees and litigation costs pursuant to the DPPA.

49.     In the event of default by one or more individual Defendants, Trooper Watts demands $95,000.00 in liquidated damages from each such defaulting Defendant.

### Count II.  Unlawful Searches and Breaches of Privacy against Defendant City only

### 42 U.S.C. § 1983

50.      Trooper Watts realleges Paragraphs 1 through 46, and states additionally or alternatively:

51.     Trooper Watts has the right to be free from unreasonable searches under the DPPA and under the Fourth Amendment of the Constitution of the United States, as applied to the states by the Fourteenth Amendment.

52.     Trooper Watts has the right to privacy under the DPPA and under the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution of the United States.

53.     The City of Miami's actions as alleged herein violated Trooper Watts's constitutional rights of privacy and to be free of unreasonable searches.

54.     In violation of 42 U.S.C. § 1983, the City of  Miami's violations of Trooper Watts's constitutional and other federal rights were committed under color of state law.

55.     The City's violations of Trooper Watts's rights are due to the City's policy or custom of allowing its police officers to invade the privacy of, and/or conduct unreasonable searches against, people in whom the officers have an unofficial interest, including to unlawfully obtain, disclose, and/or use personal information from DAVID.

56.     Additionally or alternatively, the City is negligent in training and/or supervising its officers who participated in the violation of Trooper Watts's right to be free from unreasonable searches and invasions of privacy because the City failed to adequately train and/or supervise its officers to handle recurring situations presenting an obvious potential for such violation.

57.     In light of the duties of protecting citizens against denial of the right to be free from unreasonable searches and invasions of privacy, the need for more or different training and/or supervision is and has been so obvious that the City is deliberately indifferent to the need for such training.

58.     As a direct and proximate result of Defendants' violations of Trooper Watts's rights as described in this Count, she has been injured and has suffered damages, including pain and suffering, mental anguish and emotional distress, economic damages, and loss of capacity to enjoy life.

59.     Trooper Watts demands all relief that is just and equitable from the City, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## Count III.  Unlawful Searches and Breaches of Privacy
## against Individual Defendants only

### 42 U.S.C. § 1983

60.     Trooper Watts realleges Paragraphs 1 through 26 and 28 through 46, and states additionally or alternatively:

61.     Trooper Watts has the right to be free from unreasonable searches under the DPPA and under the Fourth Amendment of the Constitution of the United States, as applied to the states by the Fourteenth Amendment.

62.     Trooper Watts has the right to privacy under the DPPA and under the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States.

63.     The individual Defendants' actions as alleged herein violated Trooper Watts's constitutional rights of privacy and to be free of unreasonable searches.

64.     In violation of 42 U.S.C. § 1983, the violations by the individual Defendants of Trooper Watts's constitutional and other federal rights were committed under color of state law.

65.     The violations by the individual Defendants of Trooper Watts's constitutional and other federal rights were committed intentionally, maliciously, and in callous disregard of her federally protected rights.

66.     As a direct and proximate result of each of the individual Defendants' violation of Trooper Watts's rights as described in this Count, she has been injured and has suffered damages, including pain and suffering, mental anguish and emotional distress, economic damages, and loss of capacity to enjoy life.

67.     Trooper Watts demands all relief that is just and equitable from each individual Defendant, including compensatory and punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

**Count IV.  Common Law Invasion of Privacy
against All Defendants**

68.     Trooper Watts realleges Paragraphs 1 through 46; and, states additionally or alternatively:

69.     this Court has supplemental jurisdiction of the subject matter of this claim by virtue of 28 U.S.C. § 1367, as to all claims arising under the laws and Constitution of the State of Florida that are so related to the claims of which this Court has original jurisdiction and which form part of the same case or controversy.

70.     All notice and other conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute § 768.28.

71.     Defendants invaded Trooper Watts's privacy by accessing her private information on the DAVID system without a lawful purpose and without her knowledge or consent.

72.     Defendants' accessing of Trooper Watts's private information is an intrusion that reasonable people -- including Trooper Watts -- would find offensive.

73.     Defendants' intrusion was intended to cause Trooper Watts to suffer emotional distress and other harm, and was made with either actual or legal malice, or with  reckless disregard of her legal rights, health, safety,  and her privacy.

74.     As a direct and proximate result of each of the Defendants' violation of Trooper Watts's rights as described in this Count, she has been injured and has suffered damages, including pain and suffering, mental anguish and emotional distress, economic damages, and loss of capacity to enjoy life.

75.     Trooper Watts demands all relief that is just and equitable from each and every Defendant, including compensatory damages, and costs.

76.     Trooper Watts demands punitive damages from the individual Defendants.  She does not seek punitive damages from the City.

## Count V.  Common Law Negligent Supervision
## against the City only

77.     Trooper Watts realleges Paragraphs 1 through 46 and 69 through 70;  and, states additionally or alternatively:

78.     At all times relevant, the City had a duty to adequately and properly supervise its employees to prevent harm to others of its employees, including to Trooper Watts.

79.     The City breached its duty by failing to adequately and properly supervise its employees to prevent harm, including invasion of privacy arising therefrom, to Trooper Watts.

80.     It was foreseeable that The City's failure to adequately and properly supervise its employees would result in the invasions of privacy and other harm against Trooper Watts.

81.     As a direct and proximate result of The City's breach of its duty to adequately and properly supervise its employees, Trooper Watts was injured and has suffered damages.

82.     Because of The City's failure to adequately and properly supervise its employees, Trooper Watts has been injured and has suffered damages, including pain and suffering, emotional distress and mental anguish, loss of capacity for enjoyment of life, and economic losses.

83.     Trooper Watts requests all relief that is just and equitable, including compensatory damages and taxable costs.

**Count VI.  Negligent Training
against the City only**

84.     Trooper Watts realleges Paragraphs 1 through 46 and 69 through 70;  and, states additionally or alternatively:

85.     At all times relevant, the City had a duty to adequately and properly train its employees to prevent harm to others of its employees, including to Trooper Watts.

86.     The City breached its duty by failing to adequately and properly train its employees to prevent invasions of privacy and harms arising therefrom, to Trooper Watts.

87.     It was foreseeable that The City's failure to adequately and properly train its employees would result in the invasions of privacy and other harm against Trooper Watts.

88.     As a direct and proximate result of The City's breach of its duty to adequately and properly train its employees, Trooper Watts was injured, and has suffered damages.

89.     Because of The City's failure to adequately and properly train its employees, Trooper Watts has been injured and has suffered damages, including pain and suffering, emotional distress and mental anguish, loss of capacity for enjoyment of life, and economic losses.

90.     Trooper Watts requests all relief that is just and equitable, including compensatory

damages and taxable costs.

**<u>Demand for Jury Trial</u>**

Trooper Watts demands trial by jury on all issues so triable.

Respectfully submitted by:

s/ Mark E. Tietig
Mark E. Tietig, Trial Counsel
Fla. Bar No. 105465
Tietig & Tietig, P.A.
6065 South Tropical Trail
Merritt Island, FL 32952
(321) 452-9944
Facsimile: (321) 452-6960
mt@tietig.com
Attorney for Plaintiff Donna Jane Watts